Filed 8/2/22  1197 West 39th Street v. Seterus CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| 1197 WEST 39TH STREET, LLC, | B299994 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. BC620025) |
| SETERUS, INC. et al., | |
| Defendants and Appellants. | |

---

APPEALS from a judgment and postjudgment order of the Superior Court of Los Angeles County, Rupert A. Byrdsong, Judge.  Judgment reversed.  Postjudgment order denying attorney fees affirmed.

Leonard, Dicker & Schreiber, Richard C. Leonard and Kevin S. Dicker for Plaintiff and Appellant.

The Ryan Firm, Timothy M. Ryan, Andrew J. Mase and Tadeusz McMahon for Defendants and Appellants Seterus, Inc. and Federal National Mortgage Association.

---

Plaintiff 1197 West 39th Street, LLC (the Company) purchased from the trustee of Stanley Simmons's bankruptcy estate property encumbered by a deed of trust securing a loan to Simmons. The Company sued Federal National Mortgage Association (Fannie Mae)—the deed of trust's successor beneficiary—and Fannie Mae's loan servicer, Seterus, Inc. (collectively the Fannie Mae parties), for declaratory relief to determine the amount required to pay off the loan. It also sued Fannie Mae for damages for an alleged refusal to provide certain information in violation of Civil Code section 2943.[1]

After a bench trial the trial court entered judgment in favor of the Company. On the declaratory relief cause of action, the court determined the amount due to be $185,107.69. On the cause of action for a violation of section 2943, the court awarded the Company $88,850 in damages jointly and severally against the Fannie Mae parties. Although the court found the Company to be the prevailing party entitled to its costs of suit, including attorney fees if applicable, it denied the Company's motion for attorney fees.

The Fannie Mae parties appeal the judgment on a variety of grounds, including the bankruptcy court had exclusive jurisdiction over the Company's action; the cause of action for violation of Civil Code section 2943 was preempted by federal law; and the Company failed to establish the elements required by Code of Civil Procedure section 1060 for declaratory relief.[2]

---

[1]     Undesignated statutory references are to the Civil Code except in section 4 of the Discussion.

[2]     The Fannie Mae parties, contending the Company failed to establish the existence of an actual controversy necessary to succeed on its declaratory relief cause of action, argued in the

The Company appeals the trial court's postjudgment order denying attorney fees.[3] We reverse the judgment and affirm the postjudgment order denying attorney fees.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Complaint and First Amended Complaint*

On May 11, 2016 the Company filed this action for declaratory relief against the Fannie Mae parties to determine the amount due on the secured loan that had been made to Simmons. On July 13, 2016 the Fannie Mae parties demurred to the complaint asserting that the Company, because it was not the borrower and had neither personal liability under the loan nor a contractual relationship with the Fannie Mae parties, lacked standing to pursue the matter and also that they were prohibited by law, including federal privacy laws, from sharing information with the Company absent authorization from Simmons, the borrower. The demurrer was noticed for hearing on February 17, 2017. On September 2, 2016 the Company filed a first amended complaint that added a second cause of action against only Fannie Mae for violation of section 2943.

In its first amended complaint the Company alleged its lawsuit involved a deed of trust recorded on August 4, 2005 against property located at 1197 West 39th Street in Los Angeles

---

trial court, and asserted at least inferentially on appeal, that the Company lacked standing to seek a determination of the outstanding amount due on the loan to Simmons, which was secured by the deed of trust. At our request, the parties submitted supplemental briefing on the issue of standing.

[3] On March 11, 2020 we granted the Company's unopposed motion to consolidate the two appeals.

that secured a loan to Simmons in the original sum of $285,000 at an interest rate of 5.625 percent. The deed of trust and underlying loan changed hands several times but were eventually assigned to Fannie Mae, which hired Seterus to service the loan. Simmons filed for bankruptcy, and ownership of the property passed to his bankruptcy estate. On November 23, 2015 the Company purchased the property from the bankruptcy trustee subject to the deed of trust. On or about December 2, 2015 the Company began contacting the Fannie Mae parties to learn the outstanding loan amount.

The Fannie Mae parties provided a demand dated January 8, 2016, addressed to Simmons and attached as an exhibit to the first amended complaint, which stated the amount required to reinstate the loan to a current status was $32,539.81 if received between January 8, 2016 and February 5, 2016. The demand indicated that reinstatement amount was comprised of $24,693.90 in past due principal and interest payments; $7,449.39 in tax and insurance payments; actual charges through February 5, 2016 (including one $411.92 entry with a due date in May 2015 for "PSLGLPOSTINGCOST"); estimated charges through February 5, 2016; and a subtraction (-$209.52) for "Suspense Funds." The January 8, 2016 demand stated the unpaid principal balance was $212,101.76.

The first amended complaint noted the January 8, 2016 demand did not further divide the $24,693.90 amount between principal and interest, and the $7,449.39 amount between tax and insurance. The Company alleged it had paid all property taxes due from the date it took title and it had also purchased insurance and an umbrella policy of $5 million. It questioned the charges on the demand as unsupported and contended the May

4

2015 charge of more than $400 for posting costs violated an automatic stay issued by the bankruptcy court.

The Company alleged it wired $32,539.81 to Seterus on February 4, 2016, and on February 26, 2016 sent another $5,000, which Seterus accepted. Since February 26, 2016 Seterus either refused to cash the Company's checks or, when the Company paid electronically, returned money to the Company's account. Although the Company submitted payments totaling $180,000 between April 1 and April 14, 2016, all of the payments were returned or not cashed. The Company sent a replacement check in the amount of $180,000.

On March 30, 2016 Seterus sent a new demand, addressed to Steven Schuman of Leonard, Dicker & Schreiber LLP and also attached as an exhibit to the first amended complaint, that set forth a payoff amount rather than a reinstatement amount. The demand explained that "the amount required to pay your loan in full is $213,429.17," a "payoff figure" that was "good through April 22, 2016," with funds received after April 22, 2016 "requir[ing] an additional $32.18 interest per day." The Company alleged the March 30, 2016 demand contained unsupported amounts that it disputed were owed. It also alleged the Fannie Mae parties refused to provide any back-up or explanation for the charges in either of the demands. It further contended interest should stop running on the amounts tendered by the Company from the dates of each payment even though the Fannie Mae parties had refused to accept and/or returned the funds. The Company sought a declaration of the amount due on the loan. It alleged entitlement to attorney fees pursuant to a paragraph of the deed of trust and section 1717.

The second cause of action alleged section 2943 required Fannie Mae to provide certain information to the Company within 21 days of demand—including the balance owed on the obligation; the amount of the monthly payment; the amount of the impound or escrow account; the nature and amount of any expense that Fannie Mae claimed had become a lien on the property; and the total amount due—but Fannie Mae failed and refused to provide the information in a timely manner, or at all. Despite the Company's continuing requests for an accounting after filing of its action, the Fannie Mae parties' counsel refused to provide further information. The first amended complaint attached exhibits described as "some of the relevant correspondence." On July 21, 2016 Seterus returned the sum of $178,026.92 to the Company without an explanation. The Company further alleged, for its second cause of action, it had been damaged as a result of the rise in interest rates pending resolution of the matter because it was unable to refinance the property. It sought compensatory damages and a statutory penalty.

2. *The Fannie Mae Parties' Demurrer to the First Amended Complaint*

The Fannie Mae parties demurred to the first amended complaint contending, among a host of other arguments, the Company failed to allege facts sufficient to establish an actual controversy because it lacked standing to pursue its action: As asserted by the Fannie Mae parties, a lender had no duty to accept a new owner of the collateral property as a borrower, as shown by title 12 United States Code section 1701j-3's

authorization of "due-on-sale clause[s]"[4]; section 13 of the deed of the trust in the case at bar provided in part, "[A]ny Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument.  Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing"; the Company was not a party to, or named as an intended beneficiary of, the loan secured by the deed of trust and had not assumed personal liability for the loan, which only reflected a contractual relationship between Simmons and the Fannie Mae parties; and federal district courts have held that a nonborrower lacks standing to challenge a deed of trust solely based on an ownership interest in the collateral property.  For the cause of action for violation of Civil Code section 2943, the Fannie Mae parties argued the first amended complaint failed to allege facts sufficient to show when a written demand for information required under that statute was made to Seterus or Fannie Mae.  They also contended the March 30, 2016 demand to Schuman provided information complying with the statute.

In its opposition the Company argued it did not claim to be the borrower and neither wanted to assume, nor claimed to have

---

[4]    A "due-on-sale clause" is defined for purposes of title 12 United States Code section 1701j-3 as "a contract provision which authorizes a lender, at its option, to declare due and payable sums secured by the lender's security instrument if all or any part of the property, or an interest therein, securing the real property loan is sold or transferred without the lender's prior written consent."

7

assumed, the loan. It argued it had standing to assert its declaratory relief cause of action as owner of the property and disagreed declaratory relief was available only for claims between parties to a contract. It also contended its first amended complaint provided dates and details regarding its attempts to obtain information. As for the March 30, 2016 payoff demand statement, the Company argued it was entitled to an accurate payoff demand statement under section 2943 but the Fannie Mae parties did not provide accurate information.

The trial court overruled the demurrer to the declaratory relief cause of action. The court determined the Company, as owner of the property, had standing to seek a declaration as to the amount owed on the lien.

The court, however, sustained the demurrer to the cause of action for violation of section 2943 with leave to amend. After setting forth relevant provisions of that section—including the statutory requirement a "beneficiary, or his or her authorized agent," deliver a beneficiary statement or a payoff demand statement within 21 days of a written demand by an "[e]ntitled person," defined to include the trustor's or mortgagor's successor in interest in the mortgaged or trust property—the trial court, stating statutory causes of action must be pleaded with particularity, determined the Company's claim was unclear and did not allege when any written demand was made for which the Fannie Mae parties had allegedly failed timely to respond. The court also granted the motion to strike attorney fee allegations with leave to amend, on the ground the Company was not a party to the loan or deed of trust and did not allege it had assumed, or substituted in as a party to, either agreement.

3. *The Operative Second Amended Complaint and the Fannie Mae Parties' Demurrer to the Second Amended Complaint and Motion To Strike*

On February 28, 2017 the Company filed the operative second amended complaint. With two exceptions, the allegations for the first cause of action for declaratory relief remained the same, or substantially the same.[5]

As for the second cause of action for violation of section 2943, which the Company continued to assert only against Fannie Mae, the second amended complaint added new allegations describing emails to the Fannie Mae parties in May and June 2016 requesting an accounting and other loan information. The emails were from Schuman, whom the Company identified as its counsel. The second cause of action also contained a new allegation that the Fannie Mae parties' actions and omissions also constituted "a violation of 12 U.S.C. § 2601, entitled Real Estate Settlement Procedures [Act] (RESPA), the relevant terms of which are largely incorporated by reference into the Deed of Trust."[6]

The Fannie Mae parties demurred to the second amended complaint on several grounds. They again argued, with respect

---

[5] The two exceptions were: (1) the addition of an allegation that the monthly amounts comprising the $7,449.39 in tax and insurance payments set forth in the January 8, 2016 demand were impounds and not amounts the Fannie Mae parties had paid to someone else; and (2) the deletion of the paragraph regarding entitlement to attorney fees under section 1717 and the deed of trust.

[6] With regard to the prayer for relief for attorney fees, although the first amended complaint stated entitlement to "costs

to the declaratory relief cause of action, the Company's lack of standing. The Fannie Mae parties also moved to strike the references to a violation of RESPA and entitlement to attorney fees. In support of their motion to strike the RESPA reference, the Fannie Mae parties argued they had removed the action to federal court based on the Company's allegation they had violated RESPA but the Company filed a motion to remand in which it admitted it was not relying on that allegation as the basis for any form of relief. The Company's motion to remand, which was attached as an exhibit to the Fannie Mae parties' motion to strike, stated the Company "seeks no enforcement of RESPA"; there was "no claim for damages under RESPA"; "[t]he fact that the Deed of Trust happens to incorporate by reference certain terms of RESPA does not mean that any issue arising under the Deed of Trust must be—or can be—handled in Federal Court"; "[a]ll of [the Company's] claims fall under the Deed of Trust and Civil Code § 2943"; and, because the case did not involve a question of federal law, the matter should be remanded to the state court.

The Company filed an opposition to the Fannie Mae parties' demurrer and motion to strike. The Company asserted the Fannie Mae parties' challenges to the declaratory relief cause of action were already rejected when the trial court overruled their demurrer to the first amended complaint. In opposing the motion to strike the RESPA allegation, the Company, attaching a copy of the district court's April 10, 2017 order remanding the action, pointed out that court had determined a fleeting reference

_____

of suit, including attorneys' fees," the second amended complaint added the language "if applicable."

to RESPA buried in a cause of action under section 2943 was insufficient to confer federal question jurisdiction; federal law, specifically RESPA, did not create the cause of action; and the Company's right to relief did not depend on a resolution of the RESPA allegation. The Company acknowledged its "claims arise under the deed of trust, not RESPA, as the Federal Court has already decided," but argued there was no reason to strike any reference to RESPA from the second amended complaint.

On March 5, 2018 the trial court overruled the Fannie Mae parties' demurrer to the second amended complaint, but, granting their motion to strike without leave to amend, struck the allegation relating to RESPA, as well as the allegation of entitlement to attorney fees in the prayer for relief.

4. *The Fannie Mae Parties' Motion for Summary Judgment or, in the Alternative, Summary Adjudication*

On April 19, 2018 the Fannie Mae parties moved for summary judgment, or in the alternative, summary adjudication on both causes of action. The notice of motion identified two issues for summary judgment or adjudication: (1) The second cause of action for a violation of section 2943 was without merit because "the undisputed facts show that Plaintiff received a payoff statement dated March 30, 2016, and a beneficiary statement in July 2016 in response to its singular request for said statement"; and (2) the first cause of action for declaratory relief was without merit because "the undisputed facts show that all charges, fees, and payments made by Plaintiff are accurately accounted for, and no actual controversy exists as to the amount required to satisfy the deed of trust."

On July 17, 2018 the trial court issued an order denying the motion. Although the order stated "the refusal to accept

11

partial payment does not provide a basis for declaratory relief" and "the Reinstatement charge of $411.92," "the accounting for the $5,000 payment from February 26, 2016," and "the escrow account balance" similarly do "not provide a basis for declaratory relief or set forth an inaccuracy in the statement," the court denied the motion for summary adjudication as to the first cause of action due to a material factual dispute regarding the requirement to pay for property insurance. Because of material fact disputes as to whether the Fannie Mae parties timely provided accurate payoff and beneficiary statements, the court denied the motion for summary adjudication as to the second cause of action.

5. *The Trial*

The bench trial commenced on February 7, 2019. The only witness who testified in person was Schuman, who, along with another attorney, also appeared as the Company's counsel. The court admitted many of the Company's exhibits into evidence.

On February 8, 2019 the Fannie Mae parties sought to have Rene Burden, a Seterus employee, testify. The Company objected on the ground another witness, Janisse Hall, had been produced for deposition as Fannie Mae's person most knowledgeable about the loan but Fannie Mae refused to have Hall appear at trial. (The Fannie Mae parties' counsel had explained Hall, as an out of state witness, could not be compelled to attend the trial.) Counsel for the Fannie Mae parties told the court Burden was on the witness list, the deposition that had taken place was for Fannie Mae's person most knowledgeable, and the Company had voluntarily withdrawn its request to depose Seterus's person most knowledgeable. The Fannie Mae parties' counsel, as an offer of proof, stated Burden would testify

about Seterus's practices as a loan servicer and its accounting for Fannie Mae. He explained Fannie Mae, although an owner of the loan, was an investor who did not perform accounting for its own loans; rather, it used servicers like Seterus for the sole purpose of "keeping the books."

The court replied, "No, not going to do that." The court stated, "We don't play fast and loose with, 'Well, you didn't ask for the right name, didn't ask for the right label.'" Although the court stated the "obvious cure" was to provide the Company an opportunity to depose Burden, the court explained, the "problem is, we're here in the middle of trial." After further argument from the parties' counsel, the court asked the Fannie Mae parties' attorney to identify the business records about which the Fannie Mae parties sought testimony. Among the records identified by the Fannie Mae parties' attorney was trial exhibit 217, which was comprised of account records that had been produced to the Company. The Company's attorney objected to the admissibility of trial exhibit 217 for lack of foundation, and the Fannie Mae parties' attorney explained Burden could testify in depth about the account history and its creation.

The court told the Fannie Mae parties' counsel, "I don't want the defense to be prejudiced in terms of putting on the case. So if you deem to put Ms. Burden up for a deposition, after the deposition we'll resume the trial." Asked by the court when he wanted to take Burden's deposition, the Company's attorney responded he did not wish to take her deposition. The court stated, "[B]ut I can't let her testify. Unless you're not objecting to her testifying and whatever happens happens." The Company's attorney replied, "I move to exclude her. The court's denied that

and offered me the deposition, so now I've got a choice. I either have to—right now it's on me." The court stated, "It is on you."[7]

The court proposed the parties submit the balance of their arguments in written briefing for the court to rule on and also referred to an earlier discussion about the parties submitting closing arguments in writing. It stated, "I'll receive whatever and the parties agree that my statement of decision will be based on those briefs and the evidence I've received today." The court clarified the evidence received that day included trial exhibit 217, which was admitted into evidence. The Company's counsel stated he agreed. The court and parties discussed the admissibility of each of the defense's additional exhibits, more of which were admitted into evidence that day.

     6. *The Proposed Statement of Decision, the Final Statement of Decision, the Fannie Mae Parties' Objections and the Judgment*

The parties submitted their posttrial/closing argument briefs on February 15, 2019. On April 26, 2019 the trial court filed its "Proposed Statement of Decision" representing its "Intended Statement of Decision," which it explained it was

---

[7] Based on the February 8, 2019 transcript of the court's discussion with the parties, the parties on appeal dispute whether the trial court had excluded Burden from testifying. The Fannie Mae parties contend the trial court abused its discretion in prohibiting Burden from testifying. The Company asserts the trial court had denied the Company's motion to exclude Burden and the Fannie Mae parties thus chose not to call Burden to the stand. The Company also points out it had brought a motion in limine to exclude evidence not produced in discovery, which it contends includes Burden's testimony, and the court never formally ruled on that motion.

submitting pursuant to California Rules of Court, rule 3.1590(c)(4). The proposed statement of decision indicated the only witness who testified was Schuman and the defense was comprised solely of the cross-examination of that witness. The court attached and incorporated by reference its minute orders detailing the trial exhibits that had been marked, identified and/or admitted in the case. The document also stated, "This Intended Statement of Decision is submitted in an effort to provide the parties with an understanding of the legal and factual basis for the Court's rulings." Under the heading "Factual Summary,"[8] the court set forth what it described as "[t]he material, significant facts." In a separate section titled "Legal Analysis—Plaintiff's Cause of Action for Accounting under Civil Code 2943,"[9] the court stated in part, "Plaintiff bought the property for $22,000 cash subject to a lien of $51,000 and Defendants' Deed of Trust. Plaintiff paid $39,512.89 and owes another $185,107.69. This evidence was unchallenged." The court found the Company had sustained damages, discussed its damages calculation and stated the Company was entitled to $87,850. It declined to award any statutory penalties under section 2943, subdivision (e)(4).

---

[8] We have omitted all unnecessary capitalization of letters, underling and bold-face type in the trial court's orders, the parties' discovery requests and any other documents quoted.

[9] Although the introductory paragraphs of the proposed statement of decision referred to the Company's two causes of action as one for an "accounting (declaratory relief)" and another for "violation of Civil Code Section 2943," its legal analysis section did not differentiate between the two causes of action.

On April 26, 2019 a minute order was entered that stated, "The Proposed Statement of Decision will become the final Statement of Decision unless objections or proposals are received pursuant to California Rules of Court[, rule] 3.1590(c)(1)." On May 16, 2019 the trial court filed its "Final Statement of Decision," which was substantially the same as its proposed statement of decision, except it stated the Company was entitled to $88,850 in damages.[10]

On May 20, 2019 the Fannie Mae parties filed objections to the April 26, 2019 proposed statement of decision on a variety of grounds. On May 23, 2019 the Fannie Mae parties filed renewed objections on the same grounds, as well as objections to the proposed judgment.

On June 6, 2019 a minute order was entered stating the Fannie Mae parties' May 20, 2019 objections, which the trial court found were "timely filed,"[11] were overruled. The trial court also overruled their May 23, 2019 renewed objections and objections to the proposed judgment.

The court entered judgment on June 12, 2019. In its judgment the court stated, for the first cause of action, it "finds and determines that the amount due on the First Deed of Trust is $185,107.69." For the second cause of action, the court stated it "finds in favor of [the Company], and against [the Fannie Mae parties], and awards damages in the sum of $88,850, jointly and

---

[10]    In its subsequently entered judgment the court explained the difference in the amount of damages was due to a mathematical error in the April 26, 2019 proposed statement of decision.

[11]    The proposed statement of decision had been mailed to the parties' counsel on a date later than April 26, 2019.

severally." (Internal footnote has been omitted.) The court found the Company to be the prevailing party and entitled to its costs of suit, "including if applicable attorneys' fees," against the Fannie Mae parties.

## DISCUSSION

1. *The Fannie Mae Parties Failed To Establish the Bankruptcy Court Had Exclusive Jurisdiction over the Action*

    a. *Background facts*

At trial Schuman testified he was one of two managers of the Company, which was formed in late 2015 for the purpose of buying a triplex from Simmons's bankruptcy estate. The Company bought the property pursuant to an asset purchase agreement entered into on October 31, 2015 by three parties: the Company; the trustee for Simmons's bankruptcy estate; and Peter Lively, a bankruptcy attorney who was Schuman's friend and had told Schuman about the bankruptcy trustee's attempt to sell the property. According to the asset purchase agreement's recitals, on November 26, 2013, Simmons had filed a voluntary bankruptcy petition pursuant to chapter 7 of title 11 of the United States Code; the property, which the bankruptcy trustee had acquired by setting aside fraudulent transfers in an adversary proceeding, was among the assets of the bankruptcy estate; Lively had recorded an abstract of judgment with the Los Angeles County Recorder's Office and had a secured claim against the estate in the approximate amount of $51,000; the Company wished to purchase the property; and the bankruptcy trustee wished to resolve Lively's claim.

The asset purchase agreement provided the bankruptcy trustee was to pay $15,000 to Lively upon entry of a final order

17

approving that agreement, with the balance of Lively's claim to be the Company's responsibility and Lively having no further claim against the bankruptcy trustee or the bankruptcy estate. Upon entry of that final approval order, the bankruptcy trustee was to execute and deliver a quitclaim deed in favor of the Company, with the Company purchasing the property on an "as is" basis, without any representations or warranties. The effectiveness of the asset purchase agreement was subject to the approval of the court in which Simmons's bankruptcy case was pending. The bankruptcy court's order was to specify title was being transferred to the Company, "subject only to the existing deed of trust recorded on August 4, 2005 as Inst. No. 05-1860555"—that is, as shown by exhibits admitted at trial, the deed of trust of which Fannie Mae was the successor beneficiary—Lively's abstract of judgment and real property taxes, if any. The asset purchase agreement provided, "No other liens shall attach to the Property." It further provided, "The parties hereto agree that the United States Bankruptcy Court for the Central District of California shall have sole and exclusive jurisdiction, sitting without a jury, to hear and determine and [*sic*] disputes that arise under or on account of this Agreement." The asset purchase agreement contained signature blocks for the bankruptcy trustee, Lively and Schuman as the Company's managing member.

On November 23, 2015 the bankruptcy court issued an order authorizing the bankruptcy trustee to sell the property to the Company. In conformity with the asset purchase agreement, the order provided the property was being sold "as is," without any representations or warranties, and free and clear of all liens except for the August 4, 2005 deed of trust, Lively's abstract of

18

judgment and any real property taxes. The bankruptcy trustee was authorized and empowered to execute and deliver on behalf of the estate any and all documents as reasonably may be necessary to implement the terms of the proposed sale. The order further stated, "The Court shall retain jurisdiction to adjudicate any disputes that may arise in connection with the sale of the Property."

Subsequently, Schuman was given a quitclaim deed dated November 24, 2015 that provided the bankruptcy trustee quitclaimed to the Company all of the bankruptcy estate's right, title and interest in the property. The quitclaim deed's cover page showed it was recorded December 2, 2015. Schuman testified he never filed a complaint in the Bankruptcy Court for the Central District of California to determine the amount of a lien, nor did he submit any filing in the bankruptcy court to determine the amount of Fannie Mae's lien.

b. *The bankruptcy court did not have exclusive jurisdiction over the Company's claims*

The Fannie Mae parties contend on appeal, as they did in their February 15, 2019 closing brief in the trial court, the trial court lacked jurisdiction over the Company's claims because, pursuant to the provisions of the asset purchase agreement and the bankruptcy court's subsequent order, the bankruptcy court had exclusive jurisdiction over those claims. Specifically, the Fannie Mae parties argue the Company by its action seeks a determination of the amount due on Fannie Mae's lien, which, they assert, is a "dispute[] that [arose] under or on account of" the asset purchase agreement and thus within the scope of that agreement's exclusive bankruptcy court jurisdiction provision, as well as a "dispute[] that [has] arise[n] in connection with the sale

19

of the Property" and thus within the scope of the bankruptcy court's November 23, 2015 order retaining jurisdiction. This argument fails as a matter of law.[12]

"[T]here is . . . a 'presumption of concurrent jurisdiction' between federal courts and state courts." (*Kingston Constructors, Inc. v. Washington Metropolitan Area Transit Authority* (1997) 14 Cal.4th 939, 948.) Although "'[we] begin[] with the presumption that state courts enjoy concurrent jurisdiction'" (*Cianci v. Superior Court* (1985) 40 Cal.3d 903, 910), "'Congress . . . may confine jurisdiction to the federal courts either explicitly or implicitly. Thus, the presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear

---

[12] "'It is . . . solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence.' [Citation.] When there is no extrinsic evidence or 'no conflict' in such extrinsic evidence as has been introduced, 'we must make an independent determination of the meaning' of a legal instrument." (*Faus v. City of Los Angeles* (1967) 67 Cal.2d 350, 360; see *Garcia v. Truck Ins. Exchange* (1984) 36 Cal.3d 426, 439 [interpretation of a written contract is "solely a judicial function . . . unless the interpretation turns upon the credibility of extrinsic evidence, even when conflicting inferences may be drawn from uncontroverted evidence"]; *Gilkyson v. Disney Enterprises, Inc.* (2021) 66 Cal.App.5th 900, 915 ["[a]bsent any conflict in extrinsic evidence, we review de novo issues regarding the proper interpretation of a contract"].)

The Fannie Mae parties, in asserting in the trial court their argument the bankruptcy court had exclusive jurisdiction, did not rely on any disputed extrinsic evidence for the interpretation of the asset purchase agreement or the bankruptcy court's November 23, 2015 order.

incompatibility between state-court jurisdiction and federal interests.' [Citation.] Put otherwise, 'the presumption is that jurisdiction is concurrent, and some strong showing of need for exclusive jurisdiction is required to overcome that presumption.'" (*Ibid.*; accord, *Mims v. Arrow Financial Services, LLC* (2012) 565 U.S. 368, 378.)

Here, the Fannie Mae parties do not rely on a statutory basis to assert the bankruptcy court has exclusive jurisdiction over the Company's claims. Indeed, they argue title 28 United States Code section 1334(b)—which states, except as provided in a subsection not relevant to this appeal, "notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11"—should not control because the Company's claims in this action fall within the scope of the asset purchase agreement's and November 23, 2015 bankruptcy court order's provisions pertaining to jurisdiction.

As the Company explains, however, the purpose of the asset purchase agreement, as set forth in its recitals, was to effectuate the Company's desire to purchase the property and the bankruptcy trustee's desire to resolve Lively's claim, with no mention of resolution of any claim over the amount of Fannie Mae's lien. The Fannie Mae parties are not parties, the Company argues, to the asset purchase agreement; and, notwithstanding a reference to "the existing deed of trust recorded on August 4, 2005 as Inst. No. 05-1860555," the Fannie Mae parties themselves are not even mentioned in the agreement.

One who is not a party to or an intended third party beneficiary of a contract ordinarily lacks standing to enforce the contract's terms.  (*Berclain America Latina, S.A. de C.V. v. Baan Company N.V.* (1999) 74 Cal.App.4th 401, 405; *Eastern Aviation Group, Inc. v. Airborne Express, Inc.* (1992) 6 Cal.App.4th 1448, 1452; see § 1559 [intended third party beneficiary has standing to enforce contract].)  While there are exceptions to this general principle—for example, a nonsignatory may be able to enforce a contractual forum selection clause against a signatory if the nonsignatory was "closely related" to the contractual relationship, that is, the nonsignatory shared a "defined and intertwining business relationship with a contracting party" (see, e.g., *Bancomer, S.A. v. Superior Court* (1996) 44 Cal.App.4th 1450, 1458-1462)—nothing in the asset purchase agreement indicates the Fannie Mae parties had standing to enforce that agreement.  Indeed, the Fannie Mae parties never attempted to establish they were parties, signatories or intended third party beneficiaries of the asset purchase agreement, nor did they assert or attempt to show they shared a defined and intertwining business relationship with a contracting party or otherwise had standing to enforce the asset purchase agreement's terms.

As for the bankruptcy court's November 23, 2015 order authorizing the sale of the property, which also provides the court retains jurisdiction to adjudicate any disputes that may arise in connection with the sale, the Fannie Mae parties never argued they were parties to any proceeding over which the bankruptcy court had "retained" jurisdiction.  In sum, the trial court properly exercised jurisdiction over the Company's lawsuit.  (See *Ventura v. ABM Industries Inc.* (2012) 212 Cal.App.4th 258, 265 ["[t]he trial court has jurisdiction 'unless and until' the defendant proves

otherwise"]; *People v. Crusilla* (1999) 77 Cal.App.4th 141, 146 ["it is well established that in state courts a claim that jurisdiction lies elsewhere (i.e., in the federal government) over an offense that is committed within the boundaries of the state, and that is defined by state law, is a defensive matter, and the defendant is required to allege and prove in the trial court "'any facts which he now claims might have had the effect of vesting exclusive jurisdiction in the federal courts"'"].)

2. *The Company's Cause of Action for Violation of Section 2943 Is Preempted and Must Be Dismissed*

The Fannie Mae parties contend federal law—specifically, the Home Owners' Loan Act (12 U.S.C. § 1461 et seq.) (HOLA) and regulations promulgated pursuant to HOLA by the Office of Thrift Supervision (OTS)—preempts the Company's second cause of action for violation of Civil Code section 2943.[13] We agree: The undisputed facts and facts not reasonably subject to dispute establish preemption under HOLA.[14]

---

[13] As with the Fannie Mae parties' bankruptcy jurisdiction contention, neither the statement of decision, which purported to provide the basis for the court's rulings, nor anything else in the record indicates the court ruled on the preemption argument, even though the Fannie Mae parties had set forth that argument in their closing brief and objected to the proposed statement of decision for omitting the issue. Even if the trial court had ruled there was no preemption, we would reverse.

[14] Federal preemption presents "a pure question of law" subject to de novo review. (*Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1089, fn. 10; accord, *Herpel v. County of Riverside* (2020) 45 Cal.App.5th 96, 100; see *Spielholz v. Superior Court* (2001) 86 Cal.App.4th 1366, 1371 ["[p]reemption is a legal issue involving statutory construction and the ascertainment of

As discussed, the Company alleged Fannie Mae, as holder of the deed of trust securing the loan to Simmons, was required under section 2943 to provide certain information and disclosures regarding the loan, such as the amount needed to pay off the loan, within 21 days of the Company's demand, but Fannie Mae failed to respond timely or at all. The deed of trust, an exhibit admitted at trial, is dated July 29, 2005; identifies the lender as "IndyMac Bank, F.S.B., a federally chartered savings bank"; provides, "Lender is a Federal Savings Bank organized and existing under the laws of the United States of America"; defines "Loan" as "the debt evidenced by the Note," plus other amounts such as interest and any late charges; and defines "Note" as "the promissory note signed by Borrower and dated July 29, 2005." Similarly, the promissory note, also an admitted trial exhibit, is dated July 29, 2005 and identifies the lender as "IndyMac Bank, F.S.B., a federally chartered savings bank." The Company did not dispute IndyMac Bank was the original lender and was at the time a federally chartered savings bank. IndyMac Bank's uncontested federal savings bank status necessarily means the Company's section 2943 cause of action against Fannie Mae was preempted.

---

legislative intent, which we also review de novo"].) "However, 'when conflicting inferences may be drawn from undisputed facts, the reviewing court must accept the inference drawn by the trier of fact so long as it is reasonable.'" (*Herpel*, at p. 100.) Here, although the trial court made no ruling on the Fannie Mae parties' preemption argument, and notwithstanding the Fannie Mae parties disputed they violated section 2943, the parties in the trial court and on appeal did not, for purposes of the preemption issue, identify any material underlying facts or inferences that are disputed.

"Whether state law is preempted by federal law depends on whether Congress intended that federal law supersede state law." (*Lopez v. World Savings & Loan Assn.* (2003) 105 Cal.App.4th 729, 736 (*Lopez*); accord, *Peatros v. Bank of America* (2000) 22 Cal.4th 147, 157 ["[w]hether federal law preempts state law is fundamentally a question whether Congress has intended such a result"].) "'[F]ederal regulations have no less pre-emptive effect than federal statutes.'" (*Lopez*, at p. 736; accord, *Jevne v. Superior Court* (2005) 35 Cal.4th 935, 950.)

"Between 1933 and 1989, federal savings and loan associations (also referred to as thrift institutions or thrifts) were regulated under . . . HOLA by the Federal Home Loan Bank Board [the Board]," which "was given 'plenary authority to issue regulations governing' thrift institutions and superseding state law." (*Akopyan v. Wells Fargo Home Mortgage, Inc.* (2013) 215 Cal.App.4th 120, 138 (*Akopyan*); see *Fidelity Federal Sav. & Loan Assn. v. de la Cuesta* (1982) 458 U.S. 141, 160, 162 [under HOLA, "Congress gave the Board plenary authority to issue regulations governing federal savings and loans"; HOLA's "statutory language suggests that Congress expressly contemplated, and approved, the Board's promulgation of regulations superseding state law"].) The OTS replaced the Board in 1989 and "was given the same plenary power to regulate federal savings associations." (*Akopyan*, at p. 138.)[15]

_____

[15]     As also explained in *Akopyan, supra*, 215 Cal.App.4th at page 140, "[t]o allow federal thrifts 'greater flexibility in their lending and investment operations,' the OTS . . . directed the thrifts to comply with the uniform interagency real estate lending standards set forth at 12 Code of Federal Regulations parts 560.100 and 560.101," which "required that a savings association 'establish loan administration procedures for its real

The OTS in 1996 adopted 12 Code of Federal Regulations part 560.2, in which, at paragraph (a), the OTS made clear it "occupie[d] the entire field of lending regulation for federal savings associations." (61 Fed.Reg. 50951-50952, 50965-50966 (Sept. 30, 1996); 12 C.F.R. § 560.2(a).) "Federal savings association" under HOLA includes a federally chartered savings bank. (12 U.S.C. § 1462(3) ["[t]he term 'Federal savings association' means a Federal savings association or a Federal savings bank chartered under section 1464 of this title"]; see *Appling v. Wachovia Mortg., FSB* (N.D.Cal. 2010) 745 F.Supp.2d 961, 970-971 ["Federal savings associations, including federal savings banks, are subject to HOLA and regulated by the Office of Thrift Supervision"].) In keeping with its "inten[t] to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation," the OTS allowed federal savings associations to "extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities," subject to certain exceptions. (12 C.F.R. § 560.2(a).) In paragraph (b) the OTS provided a non-exhaustive list of examples illustrating "the types of state laws preempted by paragraph (a)," such as, at subparagraph (9), "[d]isclosure and advertising, including laws

_____

estate portfolio,' addressing such matters as . . . payment processing; . . . loan payoffs; . . . and servicing and participation agreements. (Appen. to 12 C.F.R. § 560.101.) The reference to servicing agreements, a feature of third party loan servicing arrangements, suggests that such arrangements fell within the scope of the interagency real estate lending standards that federal thrifts were directed to follow." (Fn. omitted.)

requiring specific statements, information, or other content to be included in . . . billing statements . . . or other credit-related documents" and, at subparagraph (10), "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." (12 C.F.R. § 560.2(b)(9) & (10).) "Paragraph (c) saved from preemption certain state laws, such as contract law, 'to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a).'" (*Akopyan*, *supra*, 215 Cal.App.4th at p. 139; see 12 C.F.R. § 560.2(c).)

The OTS supplied the following guidance on how to construe its regulation: "In this regard, OTS wishes to make clear that the purpose of paragraph (c) is to preserve the traditional infrastructure of basic state laws that undergird commercial transactions, not to open the door to state regulation of lending by federal savings associations. When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption." (61 Fed.Reg. 50951, 50966-50967 (Sept. 30, 1996); see *McShannock v. JP Morgan Chase Bank NA* (9th Circ. 2020) 976 F.3d 881, 890 (*McShannock*); *Silvas v. E\*Trade Mortg. Corp.* (9th Cir. 2008) 514 F.3d 1001, 1005.) "In applying this

27

framework, we are 'not limited to assessing whether the state law on its face comes within paragraph (b) of the regulation.' [Citation.] 'Instead, we ask whether the state law, "as applied, is a type of state law contemplated in the list under paragraph (b) . . . . If it is, the preemption analysis ends."'" (*McShannock*, at p. 890.)

Here, the Company's cause of action alleging Fannie Mae failed to provide, or timely to provide, certain information and other disclosures about the loan, including the balance owed, in violation of Civil Code section 2943 is preempted because it relies on an application of that statute falling within the scope of 12 Code of Federal Regulations part 560.2(b)(9) (disclosure) and/or (10) (processing or servicing of a mortgage). (See, e.g., *Lopez, supra,* 105 Cal.App.4th at pp. 732, 735, 739, 742 ["[w]e hold that Civil Code section 2943 is within the scope of those provisions that 12 C.F.R. part 560.2 is intended to preempt"; concluding that plaintiff's causes of action challenging the practice of a federal savings association of charging a $10 fee for the fax transmission of a payoff demand statement in violation of Civil Code section 2943 were preempted by HOLA and the OTS's regulations in part because "[p]aragraph (b) . . . includ[es] '(5) Loan-related fees, including without limitation, . . . servicing fees'" and "[p]roviding the payoff demand statement is a service . . . and is a necessary step in paying off the loan"]; *Becker v. Wells Fargo Bank, N.A., Inc.* (E.D.Cal. Mar. 21, 2011, No. 2:10-cv-02799 LKK KJN PS) 2011 U.S.Dist. Lexis 29687, pp. *45-47 [plaintiff's claims that defendants violated Civil Code section 2943 "by improperly responding or failing to respond to his written demands for information about his loan debts" were preempted by HOLA because "[c]ourts analyzing Section 2943

28

and HOLA preemption in similar cases have found preemption and dismissed the claim"; quoting as an example a federal district court case from the Southern District of California that concluded a claim for alleged failures to respond to a demand letter was preempted because Civil Code section 2943 "'imposes a requirement related to disclosure, 12 C.F.R. § 560.2(b)(9), or the processing or servicing of mortgages,'" [12 C.F.R.] § 560.2(b)(10)'"]; see also *Becker v. Wells Fargo Bank, N.A., Inc.* (E.D.Cal. Sept. 19, 2012, No. 2:10-cv-02799 LKK KJN PS) 2012 U.S.Dist. Lexis 134986, p. *14 ["district courts within this circuit have rejected plaintiff's argument that instruments and 'notes' are not 'mortgages' and are therefore outside the scope of 12 C.F.R. § 560.2(b)(10)"].)

To be sure, "[u]nder the Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank Act) (Pub.L. No. 111-203 (July 21, 2010) 124 Stat. 1376), . . . 12 Code of Federal Regulations . . . part 560.2 was superseded"; "the OTS was merged into the Office of the Comptroller of the Currency (OCC), which regulates national banks"; and "[f]ield preemption under . . . HOLA was eliminated." (*Akopyan, supra,* 215 Cal.App.4th at pp. 136, 139, fns. 8, 10; see 76 Fed.Reg. 48950, 48952 (Aug. 9, 2011) [the "OTS regulations at 12 CFR parts 545, 550, 557 and 560 include certain 'occupation of the field' statements on Federal preemption"; "these occupation of the field statements in the OTS regulations have been removed from the Republished Regulations"].) However, the Dodd-Frank Act's amendments to HOLA preemption are prospective and do not affect loans originated under contracts entered into on or before July 21, 2010, as is the case here. (See, e.g., *Akopyan,* at p. 136, fn. 8 [the Dodd-Frank Act's "amendments to HOLA and [National Bank

29

Act] preemption are prospective"]; *Meyer v. One West Bank, F.S.B.* (C.D.Cal. 2015) 91 F.Supp.3d 1177, 1180-1181 ["The Dodd-Frank Act is not, however, retroactive.  Contracts formed before the Act's effective date [that is, on or before the July 21, 2010 date of enactment[16]] are, therefore, subject to the preemption rules applicable at the time of formation"]; *Brown v. Wells Fargo Bank, N.A.* (D.D.C. 2012) 869 F.Supp.2d 51, 56, fn. 5 ["[r]egulations, like statutes, cannot be applied retroactively absent express direction from Congress"; "§ 560.2 governs in this case because it was the regulation in effect when the parties entered into the Pick-a-Pay mortgage loan transaction"]; [17] see also *Bowen v. Georgetown University Hosp.* (1988) 488 U.S. 204, 208 ["congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result"]; 12 U.S.C. § 5553 ["This title . . . shall not be construed to alter or affect the applicability of any regulation, order, guidance, or interpretation prescribed, issued, and

---

[16]     The effective date of the Dodd-Frank Act was generally one day after "the date of enactment."  (Dodd-Frank Act (Pub.L. No. 111-203, § 4 (July 21, 2010) 124 Stat. 1376, 1390.)  The Dodd-Frank Act was enacted on July 21, 2010.  (E.g., *Charter Township of Clinton Police & Fire Retirement System v. Martin* (2013) 219 Cal.App.4th 924, 929, fn. 4; *McShannock, supra,* 976 F.3d at p. 885, fn. 3.)

[17]     Although *Brown v. Wells Fargo Bank, N.A., supra,* 869 F.Supp.2d at page 56, footnote 5, states the Dodd-Frank Act was passed on July 21, 2011, that statement apparently reflects a typographical error:  *Brown* cites *Poindexter v. Wachovia Morg. Corp.* (D.D.C. 2012) 851 F.Supp.2d 121, but *Poindexter* makes clear the Dodd-Frank Act was enacted on July 21, 2010.  (*Poindexter*, at p. 128, fn. 11.)

established by the Comptroller of the Currency or the Director of the Office of Thrift Supervision regarding the applicability of State law under Federal banking law to any contract entered into on or before the date of enactment of this Act [enacted July 21, 2010], by . . . Federal savings associations"]; Dodd-Frank Act (Pub.L. No. 111-203, § 1043 (July 21, 2010) 124 Stat. 1376, 2014 [setting forth the language codified under title 12 United States Code section 5553].)[18]

---

[18] The Department of the Treasury in 2017 promulgated a rule removing the OTS's regulations, effective October 11, 2018. (See 82 Fed.Reg. 47083-47084 (Oct. 11, 2017); *McShannock, supra,* 976 F.3d at p. 885, fn. 3.) That action, which the Department of the Treasury explained was taken because the Dodd-Frank Act had abolished the OTS and transferred its rulemaking authority and operative rules to other agencies that had since issued superseding regulations (82 Fed.Reg. 47083 (Oct. 11, 2017), does not alter our conclusion HOLA preempts the Company's cause of action for violation of Civil Code section 2943. As discussed, the Dodd-Frank Act's amendments to HOLA preemption are prospective and do not affect loans originated pursuant to contracts entered into on or before July 21, 2010. Moreover, the Department of the Treasury stated it issued the rule without providing the public with notice and an opportunity to comment as generally required under the Administrative Procedure Act (5 U.S.C. § 553) because the rule "does not make any substantive changes to the regulations currently applicable to savings associations and savings and loan associations and does not substantively affect these regulated entities or the public. It simply removes obsolete provisions that are likely to be a source of confusion." (82 Fed.Reg. 47083-47084 (Oct. 11, 2017).) It also characterized the rule as "not a significant regulatory action" and stated "there is no Federal mandate imposed by this rulemaking." (*Ibid.*) Even after October 11, 2018 courts have continued to rely on 12 Code of Federal Regulations part 560.2,

Without seriously disputing its section 2943 cause of action may have been preempted if asserted against IndyMac Bank, the Company contends its cause of action against Fannie Mae, which is not a federal savings association, was not preempted because the loan had been assigned to Fannie Mae and the challenged conduct violating a state statute occurred after that assignment. We agree with the Fannie Mae parties that, because a federal savings association originated the loan, HOLA preemption applies even though Fannie Mae is not a thrift and regardless of when the challenged conduct occurred. Simply put, HOLA preemption "runs with the loan."[19] (*Faught v. Wells Fargo Bank,*

the OTS's preemption regulation, to conclude state laws have been preempted by HOLA when the OTS's regulation was effective at the time the loan was obtained. (See *Asare-Antwi v. Wells Fargo Bank, N.A.* (9th Circ. 2021) 855 Fed.Appx. 370, 372, fn. 2; *McShannock*, at p. 885, fn. 3.)

[19] *Appling v. Wachovia Mortgage, FSB*, *supra*, 745 F.Supp.2d 961, a case on which the Company relies for its argument, actually supports a preemption conclusion. (*Appling*, at p. 971 ["although Wells Fargo itself is not subject to HOLA and OTS regulations, this action is nonetheless governed by HOLA because Plaintiff's loan originated with a federal savings bank and was therefore subject to the requirements set forth in HOLA and OTS regulations"].) Moreover, in 2020 the Ninth Circuit in *McShannock*—after explaining, "Federal district courts that have addressed the question have taken three different positions: (1) HOLA preemption applies to all conduct connected to a loan originating with a federal savings association; (2) HOLA preemption necessarily does not apply to national banks; and (3) whether HOLA preemption applies depends on whether the claims arise from the conduct of the federal savings association or

*N.A.* (E.D.Cal. Feb. 26, 2018, No. 2:17-cv-01706-MCE-KJN) 2018 U.S.Dist. Lexis 31742, p. *13; see, e.g., *McShannock*, *supra*, 976 F.3d at p. 889 ["there is little doubt that Congress intended HOLA to cover the sale of mortgages belonging to federal savings associations"], p. 895 ["[w]e hold that HOLA field preemption principles apply to Appellees' claims against Chase, a national bank, even though its conduct giving rise to the complaint occurred after it acquired the loans in question from WaMu, a federal savings association"]; OTS Opn. Letter No. P-2003-5 (July 22, 2003) 2003 OTS Lexis 6, pp. *2, *13 & fn. 18 [concluding "the borrower's ability to assert claims and defenses against [purchasers or assignees of loans originated by federal savings associations] is limited by federal preemption"; state law "might interfere with the ability of federal savings associations to sell mortgages that they originate under a uniform federal system"]; see also *Fidelity Federal Sav. & Loan Assn. v. de la Cuesta*, *supra*, 458 U.S. at p. 155, fn. 10 ["[t]he marketability of a mortgage in the secondary market is critical to a savings and loan, for it thereby can sell mortgages to obtain funds to make additional home loans"]; *Akopyan*, *supra*, 215 Cal.App.4th at pp. 142-143 [relying in part on "[t]he federal thrifts' participation in the secondary market as buyers, sellers, or investors" and that "their participation has been subject to federal regulation" to "conclude that the OTS intended to occupy the field of lending regulation as to both federal thrifts and their loans"], 148 ["the rationale for applying preemption to the assignees of federal

---

of the national bank"—proceeded to adopt the first approach. (*McShannock*, *supra*, 976 F.3d at pp. 887-889.)

thrifts is to allow the thrifts themselves greater freedom from state interference"].)

Finally, in an argument it did not make in the trial court, the Company asserts its cause of action for violation of section 2943 is not preempted because the Fannie Mae parties had unsuccessfully attempted to remove the case to federal court on the ground the second amended complaint referred to a violation of RESPA. It quotes language from the district court's order remanding the action for lack of subject matter jurisdiction that "a fleeting reference to RESPA buried in a cause of action under § 2943 is insufficient to confer federal question jurisdiction," and the court's conclusion that "plaintiff could not have originally brought this action in federal court, in that plaintiff does not competently allege facts supplying federal question jurisdiction, and therefore removal was improper." The Company, however, fails adequately to explain, with citation to legal authority, why the district court's remand order precludes the Fannie Mae parties' preemption defense to the Company's claim for a violation of section 2943. (See, e.g., *Orange County Water Dist. v. Sabic Innovative Plastics US, LLC* (2017) 14 Cal.App.5th 343, 383 [""'[t]he absence of cogent legal argument or citation to authority allows this court to treat the contention as waived""']; *Rojas v. Platinum Auto Group, Inc.* (2013) 212 Cal.App.4th 997, 1002, fn. 5 ["[w]e . . . disregard [respondent's] assertion as unsupported by citation to legal authority and cogent argument"].)[20]

---

[20] The Fannie Mae parties also contend the trial court erred in awarding damages jointly and severally against both Fannie Mae and Seterus on the second cause of action because, as they had argued in their objections to the trial court's then-proposed

3. *The Company Lacked Standing To Assert Its Cause of Action for Declaratory Relief*

Code of Civil Procedure section 1060 provides in part, "Any person interested under a written instrument, excluding a will or a trust, or under a contract, or who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property, . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract." "'While section 1060's language "appears to allow for an extremely broad scope of an action for declaratory relief' [citation], "an actual controversy that is currently active is required for such relief to be issued and both standing and ripeness are appropriate criteria in that determination. [Citation.]" [Citation.] "One cannot analyze requested declaratory relief without evaluating the nature of the rights and duties that the plaintiff is asserting, which must follow some recognized or cognizable legal theories that are related to subjects and requests for relief that are properly before the court.""" (*Lee v. Silveira* (2016) 6 Cal.App.5th 527, 546.)

---

judgment, the operative second amended complaint expressly alleged that cause of action was not directed against Seterus. The Company concedes the judgment reflects an apparent clerical error. No correction is necessary, however, because the judgment in favor of the Company on the second cause of action must be reversed in its entirety.

35

Here, the Company consistently maintained in the trial court, including in successfully moving to remand the action and opposing the Fannie Mae parties' demurrer to the second amended complaint, that the Company's claims all arose under the deed of trust and section 2943 and that it had standing to assert those claims as owner of the property.[21] However, although a successor in title, the Company was not a party to, and had assumed no obligations under, the loan to Simmons or the deed of trust that secured the loan. (The deed of trust required a lender-approved, written assumption for Simmons's successor in interest to obtain his rights and benefits under the deed of trust.) Accordingly, the Company had no rights or duties under either instrument and, given the nature of the Company's contentions and setting aside for the moment any standing arising from section 2943, lacked standing to seek a declaration of the outstanding balance due on that loan.[22] (See, e.g., *Otay Land Co. v. Royal Indemnity Co.* (2008) 169 Cal.App.4th 556, 565-566 [lack of contractual privity between property owner and prior owner's liability insurer defeated claim for declaratory relief regarding potential coverage under insurance policy of

---

[21] The Company did not argue (and the deed of trust did not indicate) the Company was an intended third party beneficiary and, as such, had standing. Nor did the Company contend it had a defined intertwined business relationship with a contracting party.

[22] "Lack of standing may be raised at any time in the proceeding, including at trial or in an appeal. [Citations.] We may decide a standing issue even if the trial court did not rule on the issue." (*Blumhorst v. Jewish Family Services of Los Angeles* (2005) 126 Cal.App.4th 993, 1000.)

contamination problems at property; "Code of Civil Procedure section 1060 has never been interpreted as no longer requiring appropriate standing to seek declaratory relief, or as allowing the issuance of any advisory orders about whether there should be potential insurance coverage for a policyholder's potential tort liability"]; *Shetty v. ARLP Securitization Trust Series 2014-2* (C.D.Cal., Oct. 28, 2016, No. CV 16-05467-BRO) 2016 U.S.Dist. Lexis 195822, pp. *15-18 [property owner lacked standing to pursue causes of action, including for declaratory judgment, "arising from the underlying mortgage" because "only a *borrower* (or his assignee) may bring a claim as to the underlying mortgage"]; see also *Cornelison v. Kornbluth* (1975) 15 Cal.3d 590, 596-597 ["Upon the transfer of real property covered by a mortgage or deed of trust as security for an indebtedness, the property remains subject to the secured indebtedness but the grantee is not personally liable for the indebtedness or to perform any of the obligations of the mortgage or trust deed unless his agreement to pay the indebtedness, or some note or memorandum thereof, is in writing and subscribed by him or his agent or his assumption of the indebtedness is specifically provided for in the conveyance"]; *Gantman v. United Pacific Ins. Co.* (1991) 232 Cal.App.3d 1560, 1566 ["'[s]omeone who is not a party to [a] contract has no standing to enforce the contract'"].)[23]

To be sure, because the property it acquired was burdened with the deed of trust, as a practical matter the Company, as the

_____

[23]    As the Fannie Mae parties pointed out, the Company asserted the provisions of the deed of trust were contractual in nature.  Indeed, it sought attorney fees under the provisions of the deed of trust and section 1717, which provides in part for fees in "any action on a contract."

successor in title, had an interest in an accurate determination of the amount due to redeem the property from the lien—a topic it certainly could have pursued with the bankruptcy trustee. But for purposes of its action for declaratory relief against the Fannie Mae parties, the Company's indirect interest in the borrower's obligations is insufficient to confer standing with regard to the underlying contractual dispute. Absent contractual privity—that is, a right to enforce the terms of the note or the deed of trust— the Company was not entitled to the declaratory relief it sought. (See *D. Cummins Corp. v. United States Fidelity & Guaranty Co.* (2016) 246 Cal.App.4th 1484, 1491 [in absence of contractual privity, company's "practical interest" in another's legal rights under insurance policies, "no matter how enthusiastic it may be," does not constitute "'a legally cognizable theory of declaratory relief'"]; *Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 615-616 [secured borrower who was incidental beneficiary of consent judgment lacked standing to enforce judgment and therefore had no right to declaratory relief concerning judgment's effect on his loan].)

Although the Company might, in theory, have had standing to assert a declaratory relief cause of action to determine the parties' rights and duties under section 2943,[24] including a determination of the amount necessary to pay off the loan, because the Company's claim for violation of section 2943 was preempted, the requirements of that statute could not form the

---

[24] "The prerequisites for standing to assert statutorily based causes of action are determined from the statutory language, as well as the underlying legislative intent and the purpose of the statute." (*Boorstein v. CBS Interactive, Inc.* (2013) 222 Cal.App.4th 456, 466.)

basis for an actual controversy.  (See *Lee v. Silveira, supra,*
6 Cal.App.5th at p. 546; cf. *Ball v. FleetBoston Financial Corp.*
(2008) 164 Cal.App.4th 794, 800 ["Where a trial court has
concluded the plaintiff did not state sufficient facts to support a
statutory claim and therefore sustained a demurrer as to that
claim, a demurrer is also properly sustained as to a claim for
declaratory relief which is 'wholly derivative' of the statutory
claim"].)  Accordingly, the declaratory judgment regarding the
amount due is reversed.

### 4. *The Order Denying Attorney Fees Is Affirmed*

After the trial court entered its judgment finding the
Company was the prevailing party entitled to costs of suit,
including attorney fees if applicable, the Company moved for
attorney fees on August 12, 2019,  contending it had prevailed in
an action based on a deed of trust containing an attorney fees
clause and was entitled to attorney fees under Civil Code
section 1717.[25]  It also argued it was entitled to attorney fees
under Code of Civil Procedure section 2033.420 (section 2033.420)
on the ground Fannie Mae inappropriately denied several
requests for admission.  The trial court denied the motion.

---

[25]    Civil Code section 1717, subdivision (a), provides in part,
"In any action on a contract, where the contract specifically
provides that attorney's fees and costs, which are incurred to
enforce that contract, shall be awarded either to one of the
parties or to the prevailing party, then the party who is
determined to be the party prevailing on the contract, whether he
or she is the party specified in the contract or not, shall be
entitled to reasonable attorney's fees in addition to other costs."

a. *Denial of attorney fees under Civil Code section 1717*

Civil Code section 1717 provides for attorney fees to be awarded to the prevailing party under specified circumstances. In light of our reversal of the judgment in favor of the Company, the Company was not entitled to fees under the deed of trust and Civil Code section 1717.

b. *Attorney fees under Code of Civil Procedure section 2033.420*

Section 2033.420, subdivision (a), provides, "If a party fails to admit the genuineness of any document or the truth of any matter when requested to do so under this chapter, and if the party requesting that admission thereafter proves the genuineness of that document or the truth of that matter, the party requesting the admission may move the court for an order requiring the party to whom the request was directed to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees."[26]  Subdivision (b) provides, "The court shall make this order unless it finds any of the following: [¶] (1) An objection to the request was sustained or a response to it was waived under [Code of Civil Procedure] Section 2033.290. [¶] (2) The admission sought was of no substantial importance. [¶]

---

[26]    Recovery of attorney fees under section 2033.420 does not require the attorney fees claimant to be a prevailing party. (See *Brooks v. American Broadcasting Co.* (1986) 179 Cal.App.3d 500, 509, fn. 5 ["[b]ecause a nonprevailing party may also recover expenses pursuant to [the predecessor to section 2033.420], it is important to recognize that the fact in question need not have been one which would have altered determination of the ultimate issues"]; see generally § 2033.420, subd. (a) [no mention of a prevailing party requirement].)

(3) The party failing to make the admission had reasonable ground to believe that that party would prevail on the matter. [¶] (4) There was other good reason for the failure to admit."[27]

"'The determination of whether "there were no good reasons for the denial," whether the requested admission was "of substantial importance," and the amount of expenses to be awarded, if any, are all within the sound discretion of the trial court.'" (*Bloxham v. Saldinger* (2014) 228 Cal.App.4th 729, 753; see *Brooks v. American Broadcasting Co.* (1986) 179 Cal.App.3d 500, 508 ["[o]n appeal, the trial court's decision [whether to award expenses for failure to admit requests for admission] will not be reversed unless the appellant demonstrates that the lower court abused its discretion"].)

In its motion for fees under section 2033.420 the Company argued Fannie Mae had inappropriately failed to admit nine requests for admission that it proved at trial, entitling it to $231,950 in attorney fees, which it explained constituted

_____

[27]     "'An issue is of "substantial importance" if it has "at least some direct relationship to one of the central issues in the case, i.e., an issue which, if not proven, would have altered the results in the case."'" (*Bloxham v. Saldinger* (2014) 228 Cal.App.4th 729, 752, fn. 20.)  An award of expenses under the statute "is designed to reimburse reasonable expenses incurred by a party in proving the truth of a requested admission where the admission sought was 'of substantial importance' [citations] such that trial would have been expedited or shortened if the request had been admitted." (*Brooks v. American Broadcasting Co., supra,* 179 Cal.App.3d at p. 509; accord, *City of Glendale v. Marcus Cable Associates, LLC* (2015) 235 Cal.App.4th 344, 353; see *Grace v. Mansourian* (2015) 240 Cal.App.4th 523, 530 ["[t]he purpose of requests for admissions is to expedite trial"].)

"essentially all the fees incurred in the case."[28]  (The Company now identifies only six requests for admission as a basis for reversal.)  The Fannie Mae parties opposed the Company's motion for fees under section 2033.420, arguing the Company had not established the truth or the substantial importance of the matters denied; Fannie Mae had a reasonable basis to deny the requests; and the Company's motion was defective for failing to break down the specific amounts incurred in proving the truth of the matters denied (*Garcia v. Hyster Co.* (1994) 28 Cal.App.4th 724, 736-737 ["the statute authorizes only those expenses 'incurred in making that proof,' i.e., proving the matters denied by the opposing party"]).  The Fannie Mae parties also contended the requested amount of fees was unreasonable, including because the Company improperly sought fees incurred prior to the August 9, 2016 date of Fannie Mae's responses and fees unrelated to proving the truth of the matters sought to be admitted.

At the October 7, 2019 hearing on the Company's motion, the court requested supplemental briefing, explaining it required greater specificity as to how the Company proved the truth of the matters claimed to have been unreasonably denied, and continued the hearing to December 2, 2019.  After the parties

---

[28]    In its motion the Company did not differentiate the attorney fees incurred in the case and those incurred in proving the truth of the matters Fannie Mae had denied.  The Company did, however, explain it was seeking an additional $5,025.42 in costs under section 2033.420 to which the Company would not otherwise be entitled under other statutory provisions as a prevailing party, for a total award under section 2033.420 of $236,975.42.

filed supplemental briefs[29] and the continued hearing, the court denied the motion.[30]  The minute order with the court's ruling does not explain the denial of attorney fees under Code of Civil Procedure section 2033.420 despite explaining the denial of Civil Code section 1717 fees.

Contending the trial court failed to rule on this aspect of its fees motion, the Company argues the court abused its discretion in failing to grant the fees requested and urges us to remand the matter with directions to award reasonable fees and costs.

The court unquestionably decided the Company's motion for fees under section 2033.420—the request was denied—even though it did not articulate in a written ruling its reasons for the denial.  It was not required to do so.  (See, e.g., *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1294 ["[c]ases decided under [Code of Civil Procedure] section 632 generally have held that a statement of decision is not required upon decision of a motion"]; *In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 981 ["[a] trial court is not required to issue a statement of decision for an attorney fee award"].)  And that ruling was well within the court's discretion.[31]

---

[29]    In its supplemental brief in the trial court the Company stated it was reducing the amount of fees sought under section 2033.420 to $215,542.11 because it no longer sought fees incurred prior to Fannie Mae's denials.  The Company, however, otherwise continued to argue it was entitled to all fees incurred since the time of Fannie Mae's August 9, 2016 denials.

[30]    The record contains no reporter's transcript of the December 2, 2019 proceedings or an agreed or settled statement.

[31]    Because the record, including the December 2, 2019 minute order, is silent as to the reason(s) for the court's denial of section 2033.420 fees, we infer all findings necessary to support

For Request for Admission (RFA) No. 3 ("[t]here is a dispute between Plaintiff and Fannie Mae regarding the amount required to satisfy the lien"):  Fannie Mae had reasonable ground to deny the request.  As the Fannie Mae parties explained in the trial court, Fannie Mae believed the Company's allegations were insufficient to create an "actual controversy" for purposes of the declaratory relief cause of action, which sought the amount needed to release the lien.[32]  That belief was not only reasonable, but also, as we hold, correct as a matter of law. [33]

---

the court's order.  (See, e.g., *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 ["'A judgment or order of the lower court is *presumed correct*.  All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown'"]; *Ritter & Ritter, Inc. Pension & Profit Plan v. The Churchill Condominium Assn.* (2008) 166 Cal.App.4th 103, 128.)

[32]    To the extent the Company, by "dispute," was not referring to an "actual controversy," the Company failed to establish the substantial importance of the admission, only arguing on appeal in a conclusory fashion with respect to all six RFAs that admissions would have obviated the need for a trial.  As the Fannie Mae parties argued in the trial court, the parties would have still needed to proceed with trial to determine the amount owed on the loan even if Fannie Mae had admitted the amount was in dispute.

[33]    Moreover, Fannie Mae's denial was reasonable given its response preceded the filing of the Company's first amended complaint:  Fannie Mae's response explained the Company's "operative complaint does not state what amount [the Company] believes is required to satisfy the lien."  (The allegation in the first and second amended complaints that the Company did not agree it owed the amounts stated in the Fannie Mae parties' March 30, 2016 demand was not included in the original

For RFA No. 9 ("[o]f the $24,693.90 total interest and principal due on or before February 5, 2016, $20,878.77 was interest and the balance of $3,815.13 was principal"); RFA No. 11 ("Fannie Mae did not make any of the 'tax and insurance payments' identified in Exhibit 2, i.e., any of those charges that total $7,449.39"); RFA No. 12 ("[t]he 'tax and insurance payments' identified in Exhibit 2 are impounds, not payment[s] made by or on behalf of Fannie Mae to third parties"; and RFA No. 18 ("Fannie Mae did not incur the PSLGLPOSTINGCOST of $411 that is shown on Exhibit 2"): Fannie Mae was justified in denying these requests. As discussed, the Fannie Mae parties moved for summary adjudication on the issue whether the undisputed facts showed they accurately accounted for all charges, fees and payments. The sole basis for the court's denial of the motion was a material factual dispute as to the requirement to pay for property insurance—an issue not covered by these requests for admission. Thus, there was reasonable ground for Fannie Mae to believe it would prevail on these issues.

For RFA No. 24 ("[a]s of May 9, 2016, Fannie Mae refused to accept any payments by Plaintiff on the grounds that Plaintiff is allegedly 'a third party with no interest in the property'"): Fannie Mae also had reasonable ground to believe it would prevail on this matter. Regardless of the parties' dispute over the Fannie Mae parties' ability to reject partial payments from the Company, the Company's own evidence showed Fannie Mae had,

complaint.) In support of the fees motion the Company did not identify any request that Fannie Mae update its response. (See *Burch v. Gombos* (2000) 82 Cal.App.4th 352, 359 ["[n]othing in the text of the statute creates any ongoing duty to update responses"].)

sometime on or before May 9, 2016, been willing to accept payment for the payoff amount in the March 30, 2016 demand statement.

In sum, the trial court did not abuse its discretion in denying the Company's motion for fees under section 2033.420.

## DISPOSITION

The judgment is reversed. The trial court's postjudgment order denying the Company's motion for attorney fees is affirmed. The Fannie Mae parties are to recover their costs on appeal.


PERLUSS, P. J.


We concur:


SEGAL, J.


WISE, J.*

---

\*      Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.